STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert WALBERG, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 81–605. Argued October 6, 1982.—Decided November 2, 1982.*

(Also reported in 325 N.W.2d 687.)

† Motion for reconsideration denied, without costs, on January 3, 1983.

For the defendant-petitioner there were briefs and oral argument by *William J. Tyroler,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.   This is a review of an unpublished decision of the court of appeals which affirmed the circuit court's order, Judge Robert W. Landry, presiding, denying the defendant's motion for postconviction relief pursuant to sec. 974.06, Stats.

The defendant Robert Walberg, was convicted after a trial by jury of one count of burglary, sec. 943.10 (1) (a), Stats. 1977, one count of possession of burglarious tools, sec. 943.12, and habitual criminality, sec. 939.62, as to both counts.[1] Prior to trial, the defendant brought several motions, including a motion to suppress evidence based on an illegal arrest and improper interrogation, and a motion to change venue. On June 19, 1978, the defendant filed a motion requesting that the trial judge, Christ T. Seraphim, recuse himself. The motion was based on the claim that during the motion hearings the judge had shown prejudice and bias in his remarks to defense counsel, to the detriment of the defendant. All the alleged misconduct occurred outside the presence of

---

[1] Judgment of conviction was entered on June 23, 1978, and sentence was imposed as follows: 14 years on each count, including an enhancement of five years on each charge under sec. 939.62, Stats., consecutive to each other and consecutive to a sentence on parole revocation.

the jury. Judge Seraphim refused to recuse himself, disclaiming any prejudice, and presided at the trial.

Following the trial and conviction the defendant did not appeal but subsequently brought a motion to vacate the conviction pursuant to sec. 974.06, Stats., claiming that his constitutional rights to due process and effective assistance of counsel were violated by the trial court's refusal to recuse itself. The motion was heard and denied by Judge Landry, the successor to Judge Seraphim in this action.

The motion challenges statements made by Judge Seraphim to defense counsel during the pretrial motion hearing held on March 6, 1978. During this hearing the judge, on several occasions, expressed irritation with defense counsel because he believed he was wasting the court's time and the taxpayers' money with "frivolous" objections and motions, and his habit of asking too many questions. The defendant also challenges the court's conduct in criticizing a police officer who in response to a question by defense counsel made an estimate of the defendant's height that did not match the suspect's broadcast description. In that instance, the court ordered a recess and remarked to the prosecutor, "[d]on't you practice with these witnesses." The defendant also claims that bias was shown at this hearing when, during direct examination of the defendant as to his physical and mental state during interrogation, the court interposed answers for the defendant.

Other challenged conduct at the March 6th hearing includes the court's action in holding irrelevant a line of questioning by the defense attorney and the court's expression of disbelief following the defendant's testimony that he had been denied a request to use the restroom. Another statement challenged by the defendant was the court's remark in response to the defense counsel's argument that the description of the suspect, upon which the

arrest of the defendant was made, was vague. The court stated that "[i]f I were to leave it to you [defense counsel] the police would never be able to arrest anybody."

The motion further challenges statements made at another pretrial hearing held on June 19, 1978. During the hearing Judge Seraphim ordered a change of venue when he was informed that the Supreme Court would probably grant a pretrial stay until the venue issue could be litigated.[2] While off the record, defense counsel approached the prosecutor and asked if he had an ex parte conversation with the trial court. The court overheard the question, took it as an insult, and an off-the-record exchange occurred. When they went back on the record the defendant's attorney alleged that during the off-the-record exchange Judge Seraphim told him, "I am going to fix you on the trial of this case."[3] At this point counsel asked the court to recuse itself. The court responded:

*"The Court:* There was more than that, sir. This trial in this case, if I may use the vernacular, horsing this case around, we are going to try this case. I am not going to recuse myself. I have now made arrangements, Mr. Clark, and I am ashamed of you, the man who came to me and asked me to put him in a law office, which I did, when you were a lawyer, and I did which you thank me for. I put you, when you graduated, into the District Attorney's Office and kept you there when you came and

[2] The court had previously, at the March 6th hearing, denied the defense's request for a change of venue.

[3] The exchange between Judge Seraphim and defense counsel was the subject of one of the judicial misconduct charges brought against Judge Seraphim and heard by the judicial conduct panel. The panel found that Judge Seraphim knew or should have known that his conduct failed to comply with standards 6 and 9 of the Wisconsin Code of Judicial Ethics. *In Matter of the Complaint Against Hon. Christ T. Seraphim,* No. 79-1729-J. The panel's determination was upheld by this court in *In Matter of Complaint Against Seraphim,* 97 Wis. 2d 485, 294 N.W.2d 485, cert. denied 449 U.S. 994 (1980), in which Judge Seraphim was suspended for a period of three years.

asked me that, and I had you in the District Attorney's Office. I have appointed you in this case. I'm a good friend of your mother's, a good friend of your sister's, and I was a good friend of your father's.

"[Defense counsel interrupts.]

*"The Court:* Just let me finish, sir. It is that attitude, sir, that attitude, sir, that is going to get you nowhere in the Courts of Milwaukee as long as I'm around."

Judge Seraphim went on to disclaim any prejudice against either the defendant or defense counsel.

Defense counsel then indicated that he was going to seek extraordinary relief in the Supreme Court. The court responded that he was ashamed of the defendant attorney's conduct and asked him if he wanted the defendant to get a trial. The attorney stated that he wanted him to get a fair and impartial trial and the court responded:

"Well, you are going to get one, but not if you keep bringing motions, I will tell you this. I'm not going— don't ever come to me with your bill on this thing, because I am not going to pay for all these motions that you are bringing up in the Supreme Court. I am not going to pay for them because I think they are unnecessary. I will tell you now."

A continuation of the pretrial motion hearing was held on June 21, 1978. At this time the court and the district attorney attempted to clarify the statements made at the June 19th hearing. The court denied stating it was going to "fix" defense counsel. Judge Seraphim acknowledged, stating "that if he [defense attorney] continued his tactics during the trial I was going to take care of him." The court then asked the district attorney what he remembered the court saying. The district attorney responded:

"My recollection was that you indicated at the conclusion of your statement to Mr. Clark that you would con-

trol this trial and that you would control Mr. Clark during the trial and not allow the type of conduct that had preceded his actions yesterday."

The court then stated:

"Of course, that was the action and intent of the Court. I will state I have no personal prejudice against Mr. Walberg or Mr. Clark and the way the Court handled the situation is the way I handled every attorney for eighteen years who has acted up in my court, friend or foe. Now I have had my say and we will go on with this hearing."

As previously noted, Judge Landry denied the defendant's motion for a new trial. The court found that there was no evidence that the statements made by Judge Seraphim amounted to a deprivation of rights or a violation of due process. The trial court emphasized the fact that the challenged remarks occurred in preliminary motions and outside the presence of the jury, and that there was no evidence that the trial court's actions affected the defendant's case. The court noted that while Judge Seraphim's actions were "not an example for judges to follow," it was a part of the judge's role to maintain discipline in the courtroom, which sometimes included criticizing attorneys for their courtroom conduct.

The court of appeals affirmed, finding that although the remarks were "intemperate and improper courtroom conduct," the defendant did not establish by clear and convincing evidence that the defendant was denied due process. The court found that the defendant's counsel "responded coolly, calmly and courteously to the trial court's onslaughts and courageously and effectively continued the defense of his client."

The first issue on appeal is what burden of proof applies in a motion for postconviction relief pursuant to sec. 974.06, Stats. Sec. 974.06(6) provides:

"(6) Proceedings under this section shall be considered civil in nature, and the burden of proof shall be upon the prisoner."

Although denominating the proceeding as civil and placing the burden on the defendant, the statute does not articulate the quantum of proof necessary to meet this burden. We conclude on the basis of public policy that the higher civil burden of clear and convincing evidence applies to sec. 974.06 motions.

There are two different burdens of proof that apply in civil actions: fair preponderance of the evidence and clear and convincing evidence.[4] The fair preponderance standard applies in ordinary civil actions.[5] The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action.[6] This so-called middle burden of proof has been required in such cases as fraud, undue influence, and prosecutions of civil ordinance violations which are also crimes under state law.[7]

The court of appeals, relying on its decision in *Rohl v. State,* 90 Wis. 2d 18, 28–29, 279 N.W.2d 722, 279 N.W. 2d 731 (Ct. App. 1979), *modified on other grounds,* 96 Wis. 2d 621, 292 N.W.2d 636 (1980), held that the clear and convincing burden of proof was applicable to sec. 974.06 motions. We agree. The court in *Rohl* cited to *State v. Carlson,* 48 Wis. 2d 222, 230, 179 N.W.2d 851 (1970), and *State v. Reppin,* 35 Wis. 2d 377, 385, 151 N.W.2d 9 (1967), as authority for its holding. In *Carlson* and *Reppin* we held that a defendant seeking to withdraw a guilty plea has the burden of proving adequate grounds for the withdrawal by clear and con-

---

[4] *Madison v. Geier,* 27 Wis. 2d 687, 135 N.W.2d 761 (1965); *Kuehn v. Kuehn,* 11 Wis. 2d 15, 104 N.W.2d 138 (1960).

[5] *Kuehn,* 11 Wis. 2d at 26.

[6] *Madison v. Geier,* 27 Wis. 2d at 692.

[7] *Id.*

vincing evidence. The rationale behind the use of this higher standard of proof is that once the guilty plea is entered the presumption of innocence is no longer applicable, and when the record on its face shows that the defendant was afforded constitutional safeguards, the defendant should bear the heavier burden of showing that his plea should be vacated.[8] Once the defendant waives his constitutional rights and enters a guilty plea, the state's interest in finality of convictions requires a high standard of proof to disturb that plea.

We find that similar policy considerations are present in motions for postconviction relief pursuant to sec. 974.06, Stats. The defendant's rights are much more limited under sec. 974.06 than on direct appeal.[9] As we stated in *Peterson v. State*, 54 Wis. 2d at 381:

"The postconviction motion under sec. 974.06, Stats., is not a substitute for a motion for a new trial. A sec. 974.06 motion can be made only after the defendant has exhausted his direct remedies which consist of a motion for a new trial and appeal. A sec. 974.06 motion is limited in scope to matters of jurisdiction or of constitutional dimensions. The motion must not be used to raise issues disposed of by a previous appeal. Fundamentally, the motion was authorized as a substantial replacement for the petition for habeas corpus in this court. Matters which usually were presented by petition for habeas corpus to this court now are covered by the sec. 974.06 postconviction motion to the trial court. A petition for habeas corpus can still be presented to this court, but not until the procedure under sec. 974.06 has been exhausted, or is not applicable. Such issues as sufficiency of the evidence, jury instructions, error in admission of evidence, and other procedural errors cannot be reached by a sec. 974.06 motion."

Thus a sec. 974.06 motion is only available after state process and the conviction have been finalized. The stat-

---

[8] *State v. Koerner*, 32 Wis. 2d 60, 67, 145 N.W.2d 157 (1966).

[9] *Peterson v. State*, 54 Wis. 2d 370, 383, 195 N.W.2d 837 (1972).

ute is an exception which allows collateral attack on the conviction after a finding of guilt by either a jury or a court. Because the conviction being challenged has been secured in a proceeding whereby the defendant was protected by the beyond a reasonable doubt standard of proof, and the motion is available only after other post-conviction remedies have been unsuccessful or not utilized, public policy requires that the defendant bear the heavier burden in order to get relief from such a finalized conviction. The clear and convincing burden of proof is required to further the public policy of finality of judgments after the defendant has been given ample opportunity to challenge the conviction by direct remedies.

However, this burden of proof is not critical to the present case because the determination of whether the trial court should have recused itself depends entirely on a review of undisputed statements contained in the record. "The purpose of a standard of proof is to 'instruct the fact-finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' "[10] The burden of proof relates only to the proof of facts and has no application in cases involving undisputed facts. As we said in *State v. Williams*, 104 Wis. 2d 15, 21, 310 N.W.2d 601 (1981), "When the principal facts and the only reasonable inferences are undisputed, as is true in the present case, this court is not bound by the findings of fact of the lower courts." The court went on to hold that in such circumstances it may examine the factual record *ab initio* and decide the claim presented as a matter of law. 104 Wis. 2d at 22. Therefore the decision in this case, whether Judge Seraphim should have

[10] *State v. Hanson*, 100 Wis. 2d 549, 563, 302 N.W.2d 452 (1981), quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979). *See also, Kuehn v. Kuehn*, 11 Wis. 2d at 26.

recused himself, is a conclusion of law and the court's review is *de novo*.

The principal issue on appeal is whether the defendant's rights to due process and effective assistance of counsel were violated by Judge Seraphim's failure to recuse himself.

The right to a fair trial includes the right to be tried by an impartial and unbiased judge.[11] This right was put on a constitutional basis[12] in *State ex rel. Mitchell v. Bowman*, 54 Wis. 2d 5, 6–7, 194 N.W.2d 297 (1972), where the court stated:

". . . under the constitution no person, whether a juvenile or an adult, should be tried by a judge if the person involved can prove that the judge is prejudiced against him. Every person has a right to a fair trial by an impartial judge and jury; due process requires this."

This court in *State v. Asfoor*, 75 Wis. 2d 411, 436, 249 N.W.2d 529 (1977), set out the standard for recusal:

"Although the judge acted fairly in this case, in some situations he should recuse himself. 'The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned.' ABA Standards, *The Function of the Trial Judge*, sec. 1.7 (1971). The trial judge here had no doubt of his ability to preside impartially in this case. The question then becomes whether there was any appearance of impartiality. *Code of Judicial Ethics*, 36 Wis. 2d 252, 256, Standard 3 (1967)."

---

[11] *State v. Washington*, 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978); *State v. Asfoor*, 75 Wis. 2d 411, 249 N.W.2d 529 (1977); *State v. Bell*, 62 Wis. 2d 534, 536–37, 215 N.W.2d 535 (1974).

[12] The defendant had no statutory right of substitution against Judge Seraphim pursuant to sec. 971.20, Stats., because he had already exercised that right by filing for a written substitution against Judge Victor Manian.

This case establishes two tests for recusal.[13] A subjective test based on the judge's own determination of his or her impartiality and an objective test based on whether impartiality can reasonably be questioned. Because Judge Seraphim clearly indicated that he did not doubt his ability to preside impartially at trial, the subjective test has been satisfied. The objective test remains for our consideration. Under this test Judge Seraphim should have recused himself if his impartiality could reasonably be questioned.

The prejudice alleged in this case is based entirely on the trial court's treatment of defense counsel during pretrial proceedings. The defendant contends that the bias Judge Seraphim demonstrated against defense counsel resulted in prejudice to the defendant, and that bias against the attorney in such circumstances is grounds for recusal.

This court has never addressed the issue of whether judicial prejudice against counsel can constitute bias against the client. We find that a claim of judicial prejudice against a party based on bias against the attorney is not essentially different from any other claim of judicial prejudice. The focus is the interests of the client. "If the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment."[14] While judicial prejudice against the at-

---

[13] This is also the standard established by statute. Sec. 757.19 (2) (g), Stats., provides:

"(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

". . .

"(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner."

[14] *State v. Washington,* 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978).

torney does not generally or presumptively constitute bias against the client if it can be shown that the bias toward counsel adversely affected the client's interests, then recusal is required.[15]

The *Asfoor* standard of recusal can be applicable to claims of judicial prejudice based on bias against the attorney. If the judge has any doubts as to his or her impartiality *to the client,* or if impartiality can reasonably be questioned based on the judge's relationship with the attorney, then disqualification is mandated. But it should be noted that recusal based on bias toward the attorney is the exceptional situation. A mere showing of antagonism or of a strained relationship between counsel and the court is not sufficient to require disqualification. The judicial bias toward the attorney must be sufficiently severe as to reasonably call into question the court's impartiality toward the litigant.

Turning to the allegations of prejudice in this case, we find that Judge Seraphim's impartiality toward the defendant can reasonably be questioned based on his conduct toward defense counsel. Several of the challenged remarks do not establish prejudice but rather are indirect attempts to challenge the court's rulings on the pretrial motions. Thus Judge Seraphim's comments regarding the legality of the arrest, the defendant's credibility and his actions in finding certain evidence to be irrelevant did not create an appearance of partiality against either counsel or the defendant. These matters were within his discretion as trial judge. If the rulings were decided incorrectly they should have been the subject of a direct appeal rather than a claim of denial of constitutional rights under sec. 974.06, Stats.

Many of the statements relied on to show prejudice involved the court's expression of irritation with defense

---

[15] *See generally,* Annot., *Disqualification of Judges for Bias Against Counsel for Litigant,* 23 A.L.R.3d 1416 (1969).

counsel for bringing what it believed to be "frivolous" motions and objections, and generally wasting the court's time. These remarks, standing alone, would not give the appearance of bias because such statements are generally within a trial court's power to control the conduct of the proceedings in order to assure orderly and efficient administration of justice. However, when taken together with the judge's entire course of conduct during the pretrial proceedings, they create the appearance that the court was allowing its irritation with defense counsel to affect its impartiality toward the defendant.

Several of the court's actions during the pretrial proceedings gave the appearance that the court had prejudged the merits of the defendant's case. In one instance the court interjected an answer on behalf of the defendant. In another the court criticized a state witness for giving an answer favorable to the defense. These statements, when taken in conjunction with the court's characterization of the defense counsel's actions in bringing the motions and voicing objections as "frivolous," create the appearance that the judge was not objective in his determination of the motions and objections.

But the most serious of the allegations of prejudice is the court's comment that he was going to "fix" the defense attorney at trial. The court denied using the exact phrase alleged, but acknowledged that he was going to "take care" of the attorney at trial. Further, the court told the defense attorney that he was going to get nowhere in the Milwaukee courts as long as the judge was around. The court also stated that the defendant would get a fair trial "but not if you [defense counsel] keep bringing motions."

We find that these statements created the appearance that the judge was biased against defense counsel and that this bias was affecting his impartiality to the defendant. The court, in effect, was telling defense counsel

he must choose between bringing the motions and obtaining a fair trial for the defendant. He further appeared to be threatening counsel's personal and economic interests if he continued defending his client by bringing motions and voicing objections.

Therefore we conclude that because Judge Seraphim's actions during the pretrial motion hearing created the appearance of partiality against the defendant, his failure to recuse himself was error.

However, we find that this error was harmless beyond a reasonable doubt. "Even errors of a constitutional dimension may be subject to the rule of harmless error."[16] The factors to be used in determining whether a constitutional error is harmless include: (1) the frequency of the error, (2) the nature of the state evidence against the defendant, and (3) the nature of the defense.[17]

Although the error occurred frequently during pretrial proceedings, there is no claim of error during the trial. All the objectionable statements occurred outside the presence of the jury and were made in connection with pretrial motions to suppress evidence and a motion to change venue. The parties agree that there was no misconduct on the part of Judge Seraphim *at trial* to support the allegation that the defendant was denied his rights to effective assistance of counsel and an impartial judge. There is no complaint of any trial error other than the defendant's contention that the defense attorney's trial performance might have been "chilled" because of Judge Seraphim's pretrial conduct.

[16] *State v. Zellmer*, 100 Wis. 2d 136, 150, 301 N.W.2d 209 (1981); *see also, Whitty v. State*, 34 Wis. 2d 278, 288–89, 149 N.W.2d 557 (1967); *Chapman v. California*, 386 U.S. 18 (1967).

[17] *Rudolph v. State*, 78 Wis. 2d 435, 443, 254 N.W.2d 471 (1977); *Reichhoff v. State*, 76 Wis. 2d 375, 381, 251 N.W.2d 470 (1977).

There is nothing in the record to support the defendant's contention. A reading of the entire trial transcript reveals that the attorney conducted an adequate and effective defense of his client. During the trial he vigorously cross-examined all of the state's witnesses, freely questioned the defendant when he took the stand and continued to voice objections and present motions on behalf of his client. The record further reveals that Judge Seraphim did not repeat his improper pretrial conduct at trial.[18] He was courteous to defense counsel and freely allowed him to conduct the defense of his client.

Moreover, there is no evidence in the record that during the pretrial motions the defense attorney's performance was "chilled." The record demonstrates that the defense attorney continued to make motions and voice objections even in the face of repeated criticism by Judge Seraphim. The record is entirely barren of any evidence that Judge Seraphim's conduct in any way affected defense counsel's conduct at any point in the proceedings leading up to conviction and sentencing. Further, there is no evidence or even the contention by the defendant, that the jury which convicted the defendant was in any way influenced by the conduct of the trial court.

Examining the record in light of the second and third factors, we find they also support a finding of harmless error. The defendant makes no complaint that there was insufficient evidence on which to base the conviction. No direct appeal was taken from either the pretrial or trial proceedings. The state's case was founded on strong evidence linking the defendant to the burglary. It included testimony of one of the victims of the burglary who found the defendant in his apartment. It also included a statement made by the defendant following arrest acknowledging participation in the burglary. The

---

[18] If this improper conduct appeared in trial we would be confronted with a different problem.

defense consisted entirely of the defendant's testimony in which he stated that he was present at the burglary scene but did not realize a burglary was in process. Based on the strength of the state's case, the jury could have easily disbelieved the defendant.

Thus, we conclude on a review of the entire record that the trial court's failure to recuse itself was harmless error beyond a reasonable doubt.[19] The error was non-prejudicial in that it had no effect on the defense attorney's conduct at any point during the trial. More importantly, the error had no effect on the jury's determination of guilt. Judge Seraphim's actions, although constituting error and improper judicial conduct, did not deny the defendant his right to effective assistance of counsel and the right to a fair and impartial trial.

*By the Court.*—Judgment affirmed.

[19] *Chapman v. California*, 386 U.S. 18, 23–24 (1967); *Tumey v. Ohio*, 273 U.S. 510 (1927); *Rudolph v. State*, 78 Wis. 2d at 443. *Tumey*, as cited in *Chapman*, does not stand for the proposition that the right to an impartial judge can never be subject to the harmless error rule. *Tumey* involved the constitutionally mandated disqualification of the judge because he had a direct and substantial pecuniary interest in finding the defendant guilty because the judge received costs only when the defendant was convicted. That this type of judicial prejudice is distinguishable from the instant case is clear from the court's decision in *Tumey*, where it stated: "All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, *personal bias*, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." (Emphasis supplied.) 273 U.S. 510 at 523.