**Robert WALBERG, Petitioner,**

v.

**Thomas ISRAEL and The Attorney General of the State of Wisconsin, Respondents.**

**Civ. A. No. 83–C–381.**

United States District Court, E.D. Wisconsin.

June 11, 1984.

---

William J. Tyroler, Asst. State Public Defender, Milwaukee, Wis., for petitioner.

Jerome S. Schmidt, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

Robert Walberg, currently an inmate at the Waupun Correctional Institution, has petitioned for the issuance of a writ of habeas corpus. He contends that the treatment he and the attorney representing him received before Milwaukee Circuit Court Judge Christ T. Seraphim deprived him of his Sixth and Fourteenth Amendment rights. Although I believe that Judge Seraphim's actions during the pretrial proceedings in this case were improper, his conduct of the trial itself did not violate Walberg's right to a fair trial. Accordingly, Walberg's petition for a writ of habeas corpus is denied.

### FACTS

The facts upon which Walberg's petition is based were synopsized by the Wisconsin Supreme Court when it reviewed this case. See *State v. Walberg*, 109 Wis.2d 96, 97–101, 325 N.W.2d 687 (1982). These facts, which are undisputed, may be roughly summarized as follows: Walberg was convicted of one count of burglary and one count of possession of burglarious tools, with each count enhanced by a charge of habitual criminality. Before trial, Judge Seraphim conducted a pretrial hearing on Walberg's motion to suppress a statement which was taken from him at the time of his arrest. During the hearing, Judge Seraphim conducted himself in a way which constituted, according to the Wisconsin Court of Appeals, "intemperate and improper courtroom conduct".

Judge Seraphim's remarks appear to have been spurred by what he considered to be defense counsel's "frivolous" objections and motions. Since Walberg's counsel was appointed, Judge Seraphim was responsible for authorizing his payment of fees. Defense counsel engaged in tactics which were, according to Judge Seraphim, a waste of the taxpayer's money. Judge Seraphim lambasted defense counsel for "running up a bill of $30 an hour."

Furthermore, the judge made remarks which may have revealed an intent to un-

dermine defense counsel's presentation of his motion to suppress. Despite entering a sequestration order, Judge Seraphim openly criticized a prosecution witness who gave evidence favorable to the defense theory, and then informed the witness that a prior witness had given different testimony. During a series of questions inquiring about the conditions under which Walberg gave his statement, Judge Seraphim spontaneously interrupted, interposing his own answers to defense counsel's questions. He went as far in revealing his personal opinion of the case as to refer to an individual arrested with Walberg as "a known burglar who unfortunately isn't going to be tried in this court."

All of this culminated in several remarks which Walberg argues constituted a threat against his defense counsel, the chief one of which was "I'm going to fix you on the trial of this case." (Judge Seraphim recalls differently but acknowledges telling defense counsel "that if he continued his tactics during the trial I was going to take care of him ...".)

Walberg's counsel asked Judge Seraphim to recuse himself but instead Judge Seraphim lashed back, saying:

> [I] am ashamed of you, the man who came to me and asked me to put him in a law office, which I did, when you were a lawyer, and I did which you thanked me for. I put you, when you graduated, in the District Attorney's Office and kept you there when you came and asked me that, and I had you in the District Attorney's Office. I have appointed you in this case. I'm a good friend of your mother's, a good friend of your sister's, and I was a good friend of your father's.... It is that attitude, sir, that attitude, sir, that is going to get you nowhere in the courts of Milwaukee as long as I'm around.

The judge then denied the recusal motion.

Significant, however, is the fact that Judge Seraphim added the following comments to his decision on the recusal motion:

> I will show no prejudice to this defendant. He's going to get a fair trial. The best thing that can happen to this defendant is that if I do not give him a fair trial, because this case will probably never be tried again if I make a mistake. I'm not going to make a mistake.... I have no prejudice against you [defense counsel] except the methods that certain lawyers use, that you have used, that I disapprove of. I have no personal personal [sic] prejudice against you. Now this—you know I'm a hard line judge on these matters. I want to see my cases tried. I will—the record will speak for itself as to whether I will hold prejudice against you.

The record appears to bear out Judge Seraphim's prediction. The case proceeded to the jury with Judge Seraphim presiding. The challenged statement, Walberg's admission that he participated in the burglary, was introduced in evidence [1]. The jury returned guilty verdicts upon both counts. There was no allegation that Judge Seraphim behaved improperly at trial. Walberg does, however, criticize Judge Seraphim for passing sentence immediately upon receiving the jury verdict. He is also criticized for imposing sentences which nearly reach the maximum allowable for the offenses.

In its consideration of this case, the Wisconsin Supreme Court ruled that Judge Seraphim erred in failing to recuse himself because

> these statements created the appearance that the judge was biased against defense counsel and that this bias was affecting his impartiality to the defendant. The court, in effect, was telling defense counsel he must choose between bringing the motions and obtaining a fair trial for the defendant. He further appeared to be threatening counsel's personal and economic interests if he continued defending his client by bringing motions and voicing objections.

---

**1.** Walberg's petition does not raise the admission of the statement in evidence as grounds for habeas relief.

109 Wis.2d at 108–109, 325 N.W.2d 687. However, the Supreme Court declined to reverse Walberg's conviction because it concluded that Judge Seraphim's failure to recuse himself was harmless beyond a reasonable doubt. The Court based its conclusion on these facts: All of the objectionable statements occurred outside the presence of the jury. There was no misconduct at trial which would substantiate a charge that defense counsel was deterred from giving effective assistance to Walberg or that Judge Seraphim had failed to act impartially. Finally, the State's case, was founded on strong evidence linking the defendant to the burglary, strong enough that the jury could have easily disbelieved Walberg's defense that he did not realize a burglary was in process.

### DISCUSSION

Walberg's argument in support of his petition for writ of habeas corpus proceeds along two lines: Walberg's chief argument is that Judge Seraphim's remarks revealed a prejudice against Walberg's counsel which forced him to concentrate on protecting his fee and deterred him from providing effective assistance to Walberg, which Walberg is guaranteed by the Sixth Amendment. The second argument is that Judge Seraphim's conduct reflected his bias against Walberg which deprived Walberg of his due process right to a fair trial.

### I.

I do not believe that defense counsel's alleged conflict of interest between collecting his fee and zealously defending Walberg was serious enough to constitute a deprivation of Walberg's Sixth Amendment rights. Walberg would have me adopt a principle that whenever a lawyer feels that the filing of motions or the voicing of objections places his fee in jeopardy, a conflict of interest, violative of the Sixth Amendment, occurs.

Conflicts of interest arise from a variety of settings. Courts are most often faced with conflicts created when one defense attorney represents two or more defendants whose individual interests are at odds. The configuration of the conflict which Walberg alleges is somewhat different. Nonetheless, I believe that Walberg's case can be resolved using the conflict of interest analysis generated from multiple representation cases. The alleged conflict between economic interests and Walberg's defense is not unlike a conflict between one defendant's legal interests and a co-defendant's legal interests.

The Supreme Court has made it clear that "a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). What *Cuyler* requires is that a defendant who objects to a conflict of interest have the opportunity to show "that potential conflicts impermissibly imperil his right to a fair trial." *Cuyler* at 348, 100 S.Ct. at 1718, *citing Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

In this case defense counsel was given the opportunity to voice his apprehensions about Judge Seraphim's actions, the actions which allegedly gave rise to a conflict of interest, and Judge Seraphim was given the opportunity to weigh the allegations. As the transcript of the pretrial hearing quoted above indicates, Judge Seraphim explained the reasons for his ire and should have put defense counsel's apprehensions to rest. Furthermore, Judge Seraphim's unassailed conduct at trial corroborates his pretrial assurances and persuades me that counsel had little reason to worry about his fee.

Beyond that, my review of the pretrial proceedings leads me to concur with the Wisconsin Supreme Court, when it wrote:

Moreover, there is no evidence in the record that during the pretrial motions the defense attorney's performance was "chilled". The record demonstrates that the defense attorney continued to make motions and voice objections even in the face of repeated criticism by Judge Seraphim. The record is entirely barren of any evidence that Judge Seraphim's conduct in any way affected defense coun-

sel's conduct at any point in the proceedings leading up to conviction and sentencing.

109 Wis.2d at 110, 325 N.W.2d 687.

The conflict in this case was nowhere near as serious as those found in cases raised as analogies by Walberg. In *Messelt v. Alabama*, 595 F.2d 247 (5th Cir. 1979), the court granted a petition for habeas corpus where a "unique sequence of events" violated the petitioner's due process rights. In *Messelt*, the petitioner's defense attorney cooperated in person with the District Attorney to reindict the petitioner for more serious offenses in order to "provide more incentive for [the petitioner] to secure the necessary funds to pay for his defense". The petitioner later turned on the attorney and served as informer and witness against him. In *United States v. Hurt*, 543 F.2d 162 (D.C.Cir.1976), the petitioner alleged an economic conflict of interest. However, the competing interest was not merely the collection of a fee for services rendered. Rather, the petitioner's appellate counsel had been sued for libel to the tune of $2 million by the petitioner's trial counsel. Appellate counsel was afraid that if he zealously argued that the petitioner was not effectively assisted by trial counsel, he would exacerbate the libel claims which trial counsel had made against him.

## II.

Walberg's second argument in support of his petition is that his due process right to a fair trial was violated by Seraphim's bias against him. In ruling on this argument, it is important to observe first that the Wisconsin Supreme Court's finding that it was error for Judge Seraphim to decline to recuse himself is not determinative of this issue. 28 U.S.C. § 2241(c), which empowers federal courts to grant writs of habeas corpus, states that the writ shall not extend unless the petitioner "is in custody *in violation of the Constitution*" (emphasis added). A violation of a duty to recuse arising under state law does not itself amount to a violation of the Constitution.

Instead, as the Court of Appeals for this Circuit, in adopting the opinion of one of the Circuit's district judges has observed:

A litigant is denied the fundamental fairness to which he is constitutionally entitled if the judge of his case is unfairly biased against him. However, a litigant is not denied due process by either the "appearance" of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is *in fact* treated unfairly.

*Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir.1981) (emphasis in original), *cert. den.*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982).

In general, the type of conduct which has been found serious enough to violate due process is far more questionable than what took place in this case. Unconstitutionally biased judges are those who have "a direct, personal, substantial, pecuniary interest in reaching a conclusion against [the defendant] in his case". *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927), cited in *Barry v. United States*, 528 F.2d 1094, 1099 (7th Cir.), *cert. den.*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). As the Fifth Circuit Court of Appeals has observed in a contempt setting,

The leading cases ... involved situations where there was actually some incentive to find one way or another, i.e., financial considerations ... or previous participation by the trying judge in the proceedings at which the contempt occurred.

*Howell v. Jones*, 516 F.2d 53, 57 (5th Cir. 1975), *cert. den.*, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976).

The conduct of Judge Seraphim during the pretrial phase of this case has been addressed by Milwaukee Circuit Judge Robert Landry (who succeeded Judge Seraphim and conducted the State post-conviction hearing on Walberg's motion), by Chief Judge John Decker speaking for a unanimous Wisconsin Court of Appeals, and by Chief Judge Bruce Beilfuss speaking for a unanimous Wisconsin Supreme Court. All of the judges and all of the courts have found Judge Seraphim's con-

duct during the pretrial phase of this case to be unprofessional. In calling the conduct "intemperate and improper", Judge Decker noted that Judge Seraphim had been punished for his unprofessional conduct in *In re Seraphim*, 97 Wis.2d 485, 294 N.W.2d 485, *cert. den.*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). I can add nothing to the appropriate observations about Judge Seraphim's conduct that have already been made. His performance during the pretrial stages of this case fell short of the mark. No doubt, some of Judge Seraphim's intemperate responses during the pretrial hearings were triggered by the caviling motions presented by Walberg's trial counsel. However, Judges are supposed to be above the fray; they should not get down in the pit and throw the mud. Judge Seraphim failed to discharge his obligations fairly during some of the pretrial portions of this case.

Once the actual jury trial started, Judge Seraphim cleaned up his act and conducted himself properly. He carried out a promise that he would not let his opinion of the defense counsel's pretrial tactics interfere with the processing of the charges against Walberg. As for post-trial matters, the record reveals none of the strife which took place before the trial began. In fact, Judge Seraphim made a point of complimenting defense counsel on the record for "handling himself well." Furthermore, Walberg's fate on sentencing appears related to nothing other than his lengthy career as a burglar. For these reasons, Walberg has not carried his burden of demonstrating that he was *in fact* denied a right to fair trial by Judge Seraphim.

Accordingly, Walberg's petition for writ of habeas corpus is DENIED.

IT IS THEREFORE ORDERED that this case is DISMISSED.