STATE of Wisconsin, Plaintiff-Respondent,

v.

Crystal HARRELL a/k/a Crystal Parker, Defendant-Appellant.

Supreme Court

*No. 94–1655–CR. Oral argument January 11, 1996.—Decided March 28, 1996.*

(Also reported in 546 N.W.2d 115.)

For the defendant-appellant there were briefs and oral argument by *David D. Cook*, Argyle.

For the plaintiff-respondent the cause was argued by *James M. Freimuth*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

DONALD W. STEINMETZ, J. The issue before us is whether, in a case tried by the district attorney's office, a circuit court judge, whose spouse is an assistant district attorney in the same county, is required to disqualify himself or herself under either Wis. Stat. § 757.19(2)(a) (1993-94),[1]—prohibiting a judge from hearing a case when a close relative is "counsel thereto"

---

[1] Wis. Stat. § 757.19(2)(a) (1993-94) provides as follows:

**(2)** Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

for either party—or Wis. Stat. § 757.19(2)(g),[2] —prohibiting a judge from hearing a case when the judge determines he or she cannot retain his or her impartiality. We hold that neither Wis. Stat. § 757.19(2)(a) nor Wis. Stat. § 757.19(2)(g) requires a judge to disqualify himself or herself in such a situation as long as his or her spouse did not participate in, or help prepare, the case.

Crystal Parker (a/k/a Crystal Harrell) was charged with two counts of retail theft in violation of Wis. Stat. § 943.50(1m) and (4)(a).[3] Since Parker was on parole for a 1991 felony retail theft conviction in Dane County, she was charged as a repeat offender under Wis. Stat. § 939.62(1)(a).[4] She entered a plea of no contest to

All future reference to Wisconsin Statutes will be to the 1993-94 version.

[2] Wis. Stat. § 757.19(2)(g) provides as follows:

(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

. . . .

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

[3] Wis. Stat. § 943.50(1m) and (4)(a) provide as follows:

(1m) Whoever intentionally alters indicia of price or value of merchandise or who takes and carries away, transfers, conceals or retains possession of merchandise held for resale by a merchant or property of the merchant without his or her consent and with intent to deprive the merchant permanently of possession, or the full purchase price, of the merchandise may be penalized as provided in sub. (4).

. . . .

(4) Whoever violates this section is guilty of:

(a) A Class A misdemeanor, if the value of the merchandise does not exceed $1,000.

[4] Wis. Stat. § 939.62(1)(a) provides as follows:

count 1 and guilty to count 2 of the complaint in Dane County Circuit Court, Judge Robert A. DeChambeau.

Parker then moved to vacate the conviction and disqualify the judge based on Judge DeChambeau's marriage to Gretchen Hayward, an Assistant District Attorney in the Dane County District Attorney's office. Judge DeChambeau denied Parker's motion for relief without a hearing and Parker appealed. The court of appeals certified the appeal to this court pursuant to Wis. Stat. § 809.61.

Wisconsin Statutes § 757.19(2) provides seven situations where it is mandatory that judges disqualify themselves from a case. In *State v. American TV & Appliance*, 151 Wis. 2d 175, 182, 443 N.W.2d 662 (1989), we found that this subsection contains six fact-specific situations, the existence of which can be determined objectively, and one general subjective situation which is based solely upon the judge's state of mind. As to the objective situations, "the very existence of [such a] relationship creates a disqualification by law." *Id.* Whether the general subjective situation exists and requires disqualification, however, is based upon the judge's own determination of whether he or she may remain impartial. *See id.* Parker challenges Judge DeChambeau's decision on both grounds: she asserts that his spouse's position violated one of the objective situations *and* that it should not have been possible for

---

**939.62 Increased penalty for habitual criminality.**
**(1)** If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed (except for an escape under s. 946.42 or a failure to report under s. 946.425) the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a) A maximum term of one year or less may be increased to not more than 3 years.

him to have subjectively determined that he could remain impartial.

In order to determine the merit of Parker's claims, this court must interpret both Wis. Stat. § 757.19(2)(a) and (2)(g). Statutory interpretation is a question of law which we review de novo. *See Rolo v. Goers,* 174 Wis. 2d 709, 715, 497 N.W.2d 724, 726 (1993). The ultimate goal of statutory interpretation is to ascertain the intent of the legislature. *See id.* The first step of this process is to look at the language of the statute itself. *See In Interest of Jamie L.,* 172 Wis. 2d 218, 225, 493 N.W.2d 56, 59 (1992). If the statute is ambiguous, this court must look beyond the statute's language and examine the scope, history, context, subject matter and purpose of the statute. *See Rolo,* 174 Wis. 2d at 715.

Parker's first argument is based upon one of the objective situations, specifically, disqualification based upon consanguinity. *See* Wis. Stat. § 757.19(2)(a). Subsection (2)(a) requires disqualification when "a judge is related to any party or counsel thereto . . . within the 3rd degree of kinship." *Id.* Parker asserts that the language "counsel thereto" must include any member of the law firm representing a party to the suit. In the context of a government prosecutor, Parker's interpretation would include all members of the government office which was trying the case.

Parker's reading of the statute, however, is too broad. The only practical interpretation of the language "counsel thereto" as it applies to government attorneys is to restrict its scope to only the attorney of record and any other attorneys who appear or participate in the case.[5] It certainly does not include every

---

[5] We do not reach the question in this case of whether a similar interpretation would be appropriate if Judge

government attorney who happens to be employed in the same county office or governmental department.

Although the language "counsel thereto" is clearly ambiguous,[6] and the legislative history not particularly helpful,[7] there is significant persuasive authority which supports this position.[8] First, the commentary to

DeChambeau's spouse was a partner in a private law firm that represented one of the parties.

[6] It is undisputed by either party that the language is ambiguous and that reference to external sources is necessary to determine the statute's proper interpretation.

[7] Although the legislative history does not speak directly to this question, it certainly does not evidence any intention by the legislature to define the term "counsel thereto" as broadly as suggested by Parker. In 1951, the precursor to Wis. Stat. § 757.19(2)(a) was codified, with the emphasized language being added by a Supreme Court Rule, as:

> Sec. (Rule) 256.21. Judge not to have Partner or be Interested in Costs . . . Whenever the judge of any court is related within the third degree of kinship to any attorney or agent of his spouse appearing for one of the litigants in any matter, he shall disqualify himself from acting in any such matter, and a qualified judge shall be called, in such manner as provided by statute upon the filing of an affidavit of prejudice.

Wis. Stat. § 256.21 (1950-51) (italics omitted, emphasis added). In 1977, the legislature repealed this provision and recreated it at Wis. Stat. § 757.19(2)(a) in its present form. *See* Laws of 1977, ch. 135 §§ 8, 9; Laws of 1977, ch. 187, sec. 96.

During the 1977 redraft, the phrase "appearing for one of the litigants in any matter" was removed. However, there is no indication that the legislature sought through this deletion to broaden the meaning of "attorney" or "counsel" to include attorneys other than those actually participating in the matter.

[8] It is true that there is a split in the authorities. Parker sets forth in her brief a number of ethics opinions and at least one legal decision which support her position. However, this court is not bound by opinions of foreign courts and is certainly

660

Canon 3E(1)(d)(ii) (1990)[9] of the ABA Model Code of Judicial Conduct, which contains similar, though not identical, language states, "[t]he fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge." *ABA Model Code of Judicial Conduct* Canon 3E(1)(d)(ii) cmt. (1990). The State Bar of Wisconsin has endorsed this reading of the ABA Code of Judicial Conduct concluding that "when a relative's associate appears as counsel the judge *may not have to disqualify him / herself.*" State Bar of Wisconsin Standing Comm. on Professional Ethics, Memorandum Opinion 12/76-A (1990) (emphasis added).

Second, at least one state court has come to the same conclusion. The Michigan Court of Appeals interpreted a similar statute, which required disqualification if there was a relationship between the judge and "any of the attorneys or counselors for any party," to only include "the prosecuting attorney [who] appears personally . . . ." *People v. Dycus*, 246 N.W.2d 326, 327 (Mich. App. 1976). The court specifically found

not bound by the advisory ethics opinions of other states. After carefully considering the arguments presented by *all* of the authorities, we are persuaded that those cited and discussed in the body of this opinion reach the sounder and more practical result.

[9] ABA Canon 3E(1)(d)(ii) (1990) Model Code:

 E. Disqualification.

 (1) a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

 . . . .

 (d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person;

 . . . .

 (ii) is acting as a lawyer in the proceeding.

that the fact that a judge was related to an attorney who worked in the prosecutor's office in no way raised any "taint, or suspected taint, of bias or prejudice" in the judge in question. *Id.*

Finally, the special characteristics of government attorneys make it unlikely that a judge's relationship with one would affect his or her impartiality. For example, a member of a government prosecutor's office does not have the same type of interest in the outcome of a trial as does a member of a private law firm. *See* Advisory Committee on Judicial Activities for the Judicial Conference of the United States, Advisory Op. 38, II-104 (1974). The prosecutor has no financial interest in the outcome of the case and any reputational interest "without the financial interest, is not enough to create [even] an appearance of partiality [in the judge]." *State v. Logan*, 689 P.2d 778, 785 (Kan. 1984). The thought that a judge would have an increased propensity to convict criminals because of such a relationship is equally "preposterous." *People v. Moffat*, 560 N.E.2d 352, 361 (Ill. App. 1990). Furthermore, a government prosecutor's sole goal is not simply to convict criminals. Discussing the United States Attorney's office, the United States Supreme Court stated that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935). Government prosecutors in this state hold true to similar ideals. *See O'Neil v. State*, 189 Wis. 259, 261, 207

N.W.2d 280 (1926) ("A prosecutor should not act as a partisan eager to convict, but as an officer of the court, whose duty it is to aid in arriving in the truth in every case . . . .").

It is clear from the record that Judge DeChambeau's spouse neither actually appeared in this case nor involved herself in its preparation. In fact, according to court records, Attorney Gretchen Hayward has never appeared in court before Judge DeChambeau. As such, their relationship does not fall within the scope of Wis. Stat. § 757.19(2)(a).

Parker's second argument is based upon the subjective portion of the judicial disqualification statute. Wisconsin Statutes § 757.19(2)(g) requires disqualification when a judge determines that he or she cannot, or that it appears that he or she cannot, act impartially in a case. In *American TV* we stated that subsection (2)(g) concerns "not what exists in the external world . . . but what exists in the judge's mind." *American TV*, 151 Wis. 2d at 182-83. We explained:

> Section 757.19(2)(g), Stats., mandates a judge's disqualification only when that judge makes a determination that, in fact or in appearance, he or she cannot act in an impartial manner. It does not require disqualification in a situation where one other than the judge objectively believes there is an appearance that the judge is unable to act in an impartial manner; neither does it require disqualification . . . in a situation in which the judge's impartiality 'can reasonably be questioned' by someone other than the judge.

*Id.* at 183. Appellate review of this subjective determination is "limited to establishing whether the judge

663

made a determination requiring disqualification." *Id.* at 186. *See also City of Edgerton v. General Cas. Co.,* 190 Wis. 2d 510, 521-22, 527 N.W.2d 305 (1995); *In re Disciplinary Proc. Against Crosetto,* 160 Wis. 2d 581, 584, 466 N.W.2d 879 (1991). The reviewing court must objectively decide if the judge went through the required exercise of making a subjective determination.

■

We find that Judge DeChambeau clearly made a subjective determination regarding his ability to proceed in the case. He stated on the record:

> Gretchen Hayward made no appearance on behalf of the State in the present case. Indeed, she has never appeared on behalf of the State before this court. Accordingly, the court finds that there is no reason to believe, nor is there an appearance of a reason to believe, that this court could not act, or did not act, in an impartial manner.

Obviously, he felt that he could be impartial in light of his wife's nonparticipation in the case. This is all that is required by Wis. Stat. § 757.19(2)(g).

Although Parker encourages us to provide an objective standard of review for the initial subjective decision by a judge not to disqualify himself or herself, we decline to do so. Wisconsin Statute § 757.19(2)(g) is clearly drafted so as to place the determination of partiality solely upon the judge. *See American TV,* 151 Wis. 2d at 182-83. In fact, the legislature specifically included six other objectively determinable situations in subsection (2) which require withdrawal. These are the six situations on which it chose to focus. It is not this court's role under subsection (2)(g) to expand this list by requiring a judge to recuse himself or herself in

*all* situations where an objective basis of impropriety may exist. If the general prohibition in (2)(g) were read so broadly, the six specific situations enumerated in the statute would become superfluous.

■

In sum, Wis. Stat. § 757.19(2)(g) leaves the responsibility of withdrawal to the integrity of the individual judge or justice. To imply that the judges or justices of this state are not able to make such a determination honestly, openly and fairly is a great disservice to the quality men and women who serve this state in a judicial capacity.

*By the Court.*—The judgment and order of the Dane County Circuit Court are affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree with the majority opinion's conclusion that the circuit court judge in this case was not required to disqualify himself under Wis. Stat. § 757.19(2)(a) (1993-94). I also agree with the majority opinion's conclusion that the circuit court judge made the requisite subjective determination regarding his ability to proceed with the case pursuant to Wis. Stat. § 757.19(2)(g).[1]

---

[1] Wis. Stat. § 757.19(2) provides:

Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

. . . .

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

But the court's analysis should not stop there, any more than does Wisconsin's judicial disqualification statute. As I read it, Wis. Stat. § 757.19(2)(g) also requires an objective assessment of whether or not it appears that a challenged judge can act in an impartial manner. The objective test prescribed by § 757.19(2)(g) requires a reviewing court to assess whether a reasonable, well-informed observer familiar with judicial ethical standards, the judicial system, and the facts and circumstances of the case would harbor reasonable doubts about a judge's ability to be impartial under the circumstances.

While an assessment of whether a judge appears partial might initially seem to be open-ended, this objective test, properly understood and applied, does not give litigants license to ferret out anything which might appear suspicious and use it as a basis for demanding a judge's disqualification. Instead the objective test commands that a reviewing court make a reasonable assessment of the risk that a judge, despite the very best of intentions, might not be capable of holding "the balance nice, clear and true" under the facts and circumstances. *Aetna Life Ins. v. LaVoie*, 475 U.S. 813, 825 (1986) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

My conclusion that Wis. Stat. § 757.19(2)(g) incorporates an objective test rests on four grounds. First, notwithstanding the majority opinion's conclusory assertion that the statute is "clearly drafted so as to place the determination of partiality solely upon the judge," Majority op. at 664, the plain language of the statute demonstrates that the legislature intended to promulgate an objective test. By its plain language and

All future statutory references are to the 1993-94 volume of the Wisconsin Statutes.

grammatical structure, the statute requires a judge's disqualification either when a judge determines or when it appears that he or she cannot act in an impartial manner.

Second, the court's own precedent requires an objective test. When the court first had occasion to interpret Wis. Stat. § 757.19(2)(g), it made clear that the statute required an objective as well as a subjective test. *State v. Walberg*, 109 Wis. 2d 96, 325 N.W.2d 687 (1982), *rev'd on other grounds*, 766 F.2d 1071 (1985). In determining whether a judgment of the court should be vacated on the grounds of judicial disqualification, the *Walberg* court examined the Wisconsin Code of Judicial Ethics, SCR 60.01(3),[2] as well as Wis. Stat. § 757.19(2)(g). The court concluded that both the Code and the statute required "[a] subjective test based on the judge's own determination of his or her impartiality and an objective test based on whether impartiality can reasonably be questioned." *Walberg*, 109 Wis. 2d at 106; *see id.* at 106 n.13.[3]

In the subsequent case of *State v. American TV & Appliance*, 151 Wis. 2d 175, 182, 443 N.W.2d 662 (1989), the court mistakenly failed to follow the precedent it had established in *Walberg* and thereby failed to abide by the doctrine of *stare decisis*. The doctrine of *stare decisis* requires courts to " 'stand by things decided' " and is "fundamental to 'a society governed by

---

[2] SCR 60.01(3) provides, in pertinent part, that "[a] judge should administer the law free of partiality and the appearance of partiality."

[3] The court drew support for its position from its prior decision in *State v. Asfoor*, 75 Wis. 2d 411, 436, 249 N.W.2d 529 (1977), in which the court had determined that the Code of Judicial Ethics required a judge to recuse himself or herself whenever there was any appearance of partiality.

the rule of law' . . . . A court's decision to depart from precedent is not to be made casually. It must be explained carefully and fully to insure that the court is not acting in an arbitrary and capricious manner." *State v. Stevens*, 181 Wis. 2d 410, 441-42, 511 N.W.2d 591 (1994), *cert. denied*, 113 S. Ct. 2245 (1995) (Abrahamson, J., concurring) (citation omitted). Changing the law is justified only when "precedent has become detrimental to coherence and consistency in the law." *Id.* at 442.

Without explanation, the *American TV* court stated that "[t]he Code of Judicial Ethics governs the ethical conduct of judges; it has no effect on their legal qualification or disqualification to act and a judge may be disciplined for conduct that would not have required disqualification under sec. 757.19, Stats." *American TV*, 151 Wis. 2d at 185.[4] But while the *American TV* court declined to explain its departure from precedent, there is ample reason to depart from *American TV*. By eliminating the objective standard from Wis. Stat.

---

[4] The *American TV* court tried to circumvent the *Walberg* court's explicit conclusion that Wis. Stat. § 757.19(2)(g) required both an objective and subjective test by claiming that *Walberg* was relying on the Code of Judicial Ethics rather than the statute. *American TV*, 151 Wis. 2d at 185. Even assuming *arguendo* that this assessment of the *Walberg* decision is correct, it is immaterial. The *Walberg* court stated explicitly that an objective test was required under Wis. Stat. § 757.19(2)(g). As the court has previously stated, "when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981) (quoting *Chase v. American Cartage*, 176 Wis. 235, 238, 186 N.W. 598 (1922)).

§ 757.19(2)(g) while reaffirming the importance of that standard in Wisconsin's Code of Judicial Ethics, *American TV* created an unnecessary conflict between how judges' appearance of partiality should be assessed, respectively, under the disqualification statute and the Code. As the court of appeals observed shortly after *American TV* was decided, the "supreme court has decided that even when a judge commits ethical violations by presiding over a case, his actions do not constitute grounds for recusal." *State v. Carivou,* 154 Wis. 2d 641, 644, 454 N.W.2d 562 (Ct. App. 1990).

Third, a judge's subjective assessment of whether he or she should be disqualified is not subject to meaningful appellate review. The majority opinion acknowledges that review of a judge's subjective determination is "limited to establishing whether the judge made a determination requiring disqualification." Majority op. at 663-64, (quoting *American TV,* 151 Wis. 2d at 186). Under this standard a reviewing court has little choice but to confer its imprimatur on a challenged judge's decision to hear a case.[5]

---

[5] *See* Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv. L. Rev. 736, 741 (1973), which criticized a similarly subjective standard in an earlier version of the federal disqualification statute, 28 U.S.C. § 455 (1970), noting that "[r]eviewing courts can of course be of little assistance in either defining the elements of impropriety or enforcing any such standards once formulated, since the statute requires a judge to avoid participation only when it is improper 'in his opinion.' "

Congress amended the statute in 1974 so that it would conform to revisions in the Code of Judicial Conduct enacted in 1972. One of those revisions, incorporating Canon 3C of the revised Code, requires a judge's disqualification in any proceeding in which a judge's "impartiality might reasonably be questioned." *Compare* 28 U.S.C. § 455 (1970) *with* 28 U.S.C.

Fourth, an objective test promotes confidence in the integrity of the judicial system. As the Committee on the Judiciary of the United States House of Representatives stated in explaining the 1974 revisions to the federal disqualification statute, the addition of an objective standard was "designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case."[6]

Promoting "a government of law and not of men," SCR 60.01(1), Wisconsin's Code of Judicial Ethics requires that judges place the duty to be impartial "above all" other duties. SCR 60.01(3). Because the

---

§ 455 (1993). *See also* H.R. Rep. No. 1453, 93d. Cong., 2d Sess., pt. 3 (1974) (discussing P.L. 93-512, which revised 28 U.S.C. § 455); Karen Nelson Moore, *Appellate Review of Judicial Disqualification Decisions in the Federal Courts*, 35 Hastings L.J. 829, 832-35 (1984) (discussing legislative history of 28 U.S.C. § 455); Note, *Disqualification of Federal Judges, supra*, at 238-42, 246-59 (discussing legislative history of 28 U.S.C. § 455).

[6] H.R. Rep. No. 1453, 93d Cong., 2d Sess., pt.3, at 6355 (1974). Members of the subcommittee of the Judicial Council charged with the revision of Wisconsin's disqualification procedures which resulted in Wis. Stat. § 757.19 were mailed a copy of the law amending 28 U.S.C. § 455 in July 1975. The text of what is now Wis. Stat. § 757.19(2)(g) was approved at the Judicial Council meeting on December 19, 1975. *See* Minutes of the Judicial Council meeting of 12/19/75 at 4; Letter from Judicial Council executive secretary Richard R. Malmgren to members of the New Civil Rules Committee of 7/18/75. Hence the drafters of Wis. Stat. § 757.19(2)(g) were aware that an objective test had recently been incorporated in the federal disqualification statute, bolstering the inference that Wis. Stat. § 757.19(2)(g) also requires an objective test.

duty of impartiality is paramount, "the Code measures judicial conduct by an objective standard . . . in the provision that a judge should administer the law free of 'the appearance of partiality,' " *American TV*, 151 Wis. 2d at 185.

Finally, I conclude that apart from Wis. Stat. § 757.19 and the Wisconsin Code of Judicial Ethics, an objective test is required by the due process guarantees of the federal and state constitutions. The United States Supreme Court has repeatedly made clear that the due process guarantees inscribed in the federal Constitution require application of an objective test to determine whether a judge should have been disqualified from hearing a case. The Court has stated that "[t]he Due Process Clause may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice." *LaVoie*, 475 U.S. at 825 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).[7]

---

[7] As the *LaVoie* Court observed, not all matters that might require judicial disqualification under federal or state statutory standards would necessarily give rise to constitutional questions warranting disqualification under the due process clause. *LaVoie*, 475 U.S. at 820; *see also Walberg*, 109 Wis. 2d 96, 111 & n.19 (distinguishing appearances of partiality sufficient to warrant disqualification under, respectively, a statutory provision and a constitutional provision); Note, *Disqualification of Federal Judges for Bias or Prejudice*, 46 U. Chi. L. Rev. (1978) 236, 237 n.6 (federal constitutional standard for judicial disqualification not well defined by federal courts because federal statutes establish a more stringent standard than the Constitution demands).

Because I believe that a reasonable, well-informed observer of the judicial system would conclude that the circuit court judge in this case was not partial and that there was no appearance of partiality, I concur in the decision reached by the majority. But because I also believe that Wisconsin's disqualification statute, the Code of Judicial Ethics, prior decisions of this court, federal constitutional law and the integrity of the judicial system require the application of an objective test, I would have arrived at that decision differently. I agree with Chief Justice Rehnquist that "just as Clemenceau counseled that war was too important a matter to be left to the generals, so judicial disqualification is too important a matter to be left entirely to the judges."[8]

ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority opinion's conclusion that § 757.19(2)(g) involves a subjective test and that the circuit court judge in this case made the requisite determination that he could remain impartial. The subjective nature of § 757.19(2)(g) was decided by this court in *State v. American TV & Appliance*, 151 Wis. 2d 175, 182, 443 N.W.2d 662 (1989). This court should not abandon such precedent without strong justification, because adherence to precedent is fundamental to "a society governed by the rule of law." *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 420 (1983).

The Supreme Court has recognized certain factors which may provide significant justification for departure from precedent, including: (1) the rule has proven

---

[8] William H. Rehnquist, *Sense and Nonsense About Judicial Ethics*, 28 Rec. Ass'n of the Bar, N.Y.C., 694, 695-96 (1973).

to be intolerable simply in defying practical workability; (2) the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) related principles of law have changed or developed such that the rationale behind the old law has been undermined; (4) facts have changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854-55 (1992) (joint opinion of O'Connor, Kennedy, and Souter, JJ.) (citations omitted). We have not been presented with any of these justifications in the intervening years since *American TV* was decided.

Therefore, I acknowledge that review under § 757.19(2) is "limited to establishing whether the judge made a determination requiring disqualification." *American TV*, 151 Wis. 2d at 186. However, I write separately to emphasize that due process requires that every person has a right to a fair trial by an impartial and unbiased judge. *State v. Walberg*, 109 Wis. 2d 96, 105, 325 N.W.2d 687 (1982), *rev'd on other grounds*, 766 F.2d 1071 (1985). I agree with Justice Abrahamson that § 757.19(2)(g) does not foreclose consideration of this fundamental due process right. *Aetna Life Ins. v. LaVoie*, 475 U.S. 813, 825 (1986). However, as the *Aetna* court recognized, only in the most extreme cases does the Due Process Clause require disqualification for general allegations of bias. *Aetna*, 475 U.S. at 821. I concur, that judged by this standard, there is no due process violation in this case.

I am authorized to state that Justice JANINE P. GESKE joins this opinion.