**In re William Allan JACOBS, Petitioner.**

**State of Minnesota, Respondent,**

v.

**William Allan Jacobs, Petitioner.**

**No. A10–1400.**

Court of Appeals of Minnesota.

Nov. 24, 2010.

Review Granted Jan. 18, 2011.

rejected in the denial of that motion. *See*   district court's order of 19 February 2010.

Paul C. Engh, Minneapolis, MN; and Joseph S. Friedberg, Minneapolis, MN, for petitioner.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Judith A. Johnston, Special Assistant County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Presiding Judge; JOHNSON, Chief Judge; and MINGE, Judge.

## SPECIAL TERM OPINION

TOUSSAINT, Judge.

Petitioner William Allan Jacobs, who is charged with first-degree criminal sexual conduct, filed a petition for a writ of prohibition to prevent the assigned judge from presiding over the prosecution. Respondent State of Minnesota has filed a motion to dismiss the petition, which has been denied by a separate order. We deny the petition for prohibition.

## DECISION

■ Jacobs argues that the assigned judge's impartiality can reasonably be questioned based on his spouse's employment with the Hennepin County Attorney's Office.[1] *See generally State v. Laughlin,* 508 N.W.2d 545, 547 (Minn.App. 1993). This court's inquiry, in determining whether a judge should be removed for cause, must "include an objective examination into the circumstances surrounding the removal request." *Id.* at 548.

In opposing the petition, the state cites rule 2.11 of the Code of Judicial Conduct, which provides that a judge should disqualify himself or herself if his or her spouse, among other things, "has more than a de minimis interest that could be substantially affected by the proceeding." Minn.Code Jud. Conduct 2.11(A)(2)(c). The state argues that an assistant county

---

1. The record indicates that the judge's spouse has been transferred to the civil division. But our decision does not rely on the spouse's assignment at the time of the motion to remove.

attorney does not have such an interest in a prosecution in which he or she is not involved. *See State v. Harrell*, 199 Wis.2d 654, 546 N.W.2d 115, 118 (1996) (noting that government attorneys lack "financial" or "reputational" interest in case handled by another attorney in office that partner in law firm would have). We agree.

The Hennepin County Attorney's Office is a large office that prosecutes a large volume of cases. Assuming that a judge's spouse is not personally involved in a case, the personal interest, if any, of the judge's spouse in the prosecution of that case to conviction would be de minimis. Even from the institutional perspective, we note that prosecutors are not merely advocates but also "ministers of justice" charged with protecting the rights of the accused as well as the rights of the public. *State v. Bradford*, 618 N.W.2d 782, 798 (Minn.2000) (quotation omitted); *see Adair v. State, Dept. of Educ.*, 474 Mich. 1027, 709 N.W.2d 567, 576 (2006) (noting that attorney general's office, as prosecutor's office in which justices' spouses were employed, operated under "traditional credo" that office prevailed when "justice is done," not merely when it won case).

█ Thus, Jacobs has not shown that the judge's impartiality can reasonably be questioned on this basis. Furthermore, a judge's own previous legal employment and whatever loyalties it might have created is something that the law generally presumes a judge can put aside unless it involved the same action. *Cf.* Minn.Code Jud. Conduct 2.11(A)(5)(b) (providing for disqualification if judge formerly employed by government participated "personally and substantially" in matter at issue). A judge's spouse's employment, or former employment, does not any more convincingly call into question the judge's impartiality.

The parties have cited case law from other jurisdictions on this issue. Jacobs cites *Smith v. Beckman*, 683 P.2d 1214 (Colo.App.1984), which also involved an assigned judge's spouse working in the district attorney's office that was prosecuting the case. That relationship was held sufficient to create a reasonable question as to the assigned judge's impartiality. *Id.* at 1216. That conclusion was based in part on the close nature of the marital relationship, the public perception that it involves a sharing of confidences, and the public view of people in a marital relationship as a "couple", or a "partnership". *Id.*

The district court here noted that the reasoning of *Beckman*, a 1984 decision, runs counter to that of the great majority of subsequent cases. *Adair*, 709 N.W.2d at 575–76, collects a number of cases holding disqualification is not required when a judge's spouse or close relative works in the same law firm, including a public firm such as a district attorney's office, in which an attorney in the case works. Many of these cases involve family rather than marital relationships. Some of the out-of-state decisions involve specific disqualification provisions rather than the more general rule against a judge presiding whose impartiality "might reasonably be questioned."

The trend of the case law has been against the holding in *Beckman*. The closeness of the marital relationship, relied on in *Beckman*, is counter-balanced by the institutional aspects of employment in a public law firm such as a county attorney's office. As noted by the Wisconsin Supreme Court, the "special characteristics of government attorneys make it unlikely that a judges relationship with one would affect his or her impartiality." *Harrell*, 546 N.W.2d at 118. The *Harrell* court noted that a prosecutor has no financial interest in the outcome of a particular

prosecution and an insufficient reputational interest to create an appearance of impropriety in the prosecutor's spouse. *Id.* The court noted: "The thought that a judge would have an increased propensity to convict criminals because of such a relationship is ... preposterous." *Id.* (quotation omitted).

We do not believe that the institutional loyalty of a prosecutor-spouse could reasonably appear to affect the impartiality of the judge-spouse. As noted above, a judge's own prior legal employment and whatever loyalties it might have created is something that the courts presume judges are capable of putting aside unless they personally participated in the same matter. Minn.Code Jud. Conduct 2.11(A)(5)(b).

Jacobs urges that we apply the standard of what is reasonable to the general public. But the applicable standard requires an objective "examination," not merely an opinion. *State v. Dorsey,* 701 N.W.2d 238, 248 (Minn.2005). Such an examination must distinguish between a prosecutor-spouse directly involved in the case and one who has no personal involvement. This is not merely a technical distinction. *Cf. State v. Vidales,* 6 Neb.App. 163, 571 N.W.2d 117, 124 (1997) (noting "conflict in the case between what [judge] must impartially determine and what [prosecutor-spouse] officially believes as a prosecutor is clear," although prosecutor-spouse's only involvement was to sign complaint).

Jacobs also argues that the assigned judge is subject to disqualification for failing to disclose his wife's employment. He does not cite any provision requiring such disclosure. Rule 2.11(C) merely allows a judge "subject to disqualification" to disclose the basis for that disqualification and ask the parties if they are willing to waive the disqualification. Minn.Code Jud. Conduct 2.11(C). That disclosure provision assumes that the judge has already determined that he or she is subject to a disqualification provision. As we have concluded above, the assigned judge was not "subject to disqualification" under the rule and had not determined that he should be disqualified.

Because the employment of the assigned judge's spouse in the county attorney's office does not provide a basis to question the judge's impartiality, the petition for prohibition is denied.

**Writ denied.**