# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP1369**

STATE OF WISCONSIN

Cir. Ct. No.  2007CF5

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMES ALLEN NICHOLS,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Marinette County: JANE M. SEQUIN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. James Allen Nichols appeals from an order denying both his WIS. STAT. § 974.06 (2021-22)[1] postconviction motion and his motion for the Honorable Jane M. Sequin to recuse herself from deciding his postconviction motion. He also appeals an order denying his motion for reconsideration.[2] Nichols argues that Judge Sequin was subjectively and objectively biased and should not have ruled on his postconviction motion. Further, he contends that the circuit court erred when it denied his postconviction motion without a hearing. For the reasons that follow, we affirm the court's orders.

## BACKGROUND

¶2 In 2007, following a jury trial, Nichols was convicted of second-degree intentional homicide, hiding a corpse, and being a felon in possession of a firearm. Nichols was represented by Attorneys Henry Schultz and Kent Hoffmann (hereinafter, "trial counsel"). Following his conviction, Nichols filed an appeal as a matter of right, during which time he was represented by Attorney Chris Gramstrup (hereinafter, "postconviction counsel"), who raised three claims, none of which asserted ineffective assistance of trial counsel. We affirmed the judgment of conviction. *State v. Nichols*, No. 2008AP940, unpublished slip op. (WI App Mar. 31, 2009).[3]

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Nichols does not make any independent arguments as to why the circuit court erred in denying his motion for reconsideration. We will therefore focus our analysis on the court's order denying his postconviction motion and motion for recusal.

[3] We cite to this unpublished case simply for background information and law of the case. *See* WIS. STAT. RULE 809.23(3).

2

¶3      Roughly ten years later, Nichols, represented by Attorney John Miller Carroll (hereinafter, "appellate counsel"), filed with this court a petition for a writ of habeas corpus pursuant to *State v. Knight*, 168 Wis. 2d 509, 512-13, 484 N.W.2d 540 (1992), alleging that his postconviction counsel was ineffective for failing to argue that his trial counsel were ineffective.  We denied that writ, stating that Nichols was required to seek relief through a WIS. STAT. § 974.06 motion because the attorney he alleged provided ineffective assistance was his postconviction counsel, not appellate counsel.[4]  *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996).

¶4      Subsequently, Nichols filed a postconviction motion in May 2017 pursuant to WIS. STAT. § 974.06.  He argued that his postconviction counsel was constitutionally ineffective because he failed to challenge trial counsel's effectiveness in seven ways.  In October 2017, the circuit court, the Honorable David G. Miron presiding, issued an order denying the May 2017 motion following an oral ruling.  The court determined that Nichols' claims failed for two reasons.  First, Nichols failed to demonstrate "why these new issues that are being raised are clearly stronger than those actually raised" previously.  Second, the court denied each claim on its merits, finding that counsel did not perform deficiently by failing to raise them.  Nichols did not appeal the court's order, and his appellate counsel withdrew from representation.

---

[4] "Even though [WIS. STAT. §] 974.06 was designed to supplant habeas corpus, the legislature has expressly recognized in the statute that [§] 974.06 may on occasion prove 'inadequate or ineffective to test the legality' of a defendant's detention.  In such circumstances, a petition for a writ of habeas corpus may still be appropriate." *State v. Knight*, 168 Wis. 2d 509, 520, 484 N.W.2d 540 (1992) (footnote omitted; citations omitted).

¶5      In June 2018, Nichols filed a pro se WIS. STAT. § 974.06 postconviction motion. This motion raised the same seven claims as his May 2017 motion, but it added one new claim: that his trial, postconviction, and appellate counsel were all constitutionally ineffective for not filing a motion for Judge Miron's recusal. Nichols stated in his motion that he was filing a pro se motion to "undo the procedural default that [his appellate counsel] had placed [Nichols] in by abandoning him and breaching the contract that [Nichols'] father had reached with [appellate counsel]."

¶6      That same day, Nichols filed a pro se motion titled, "Verified motion to disqualify judge," asking Judge Miron to recuse himself from deciding Nichols' June 2018 motion. In May 2020, Judge Miron issued an order denying Nichols' recusal motion. Judge Miron retired later that year, prior to issuing a decision or order on Nichols' June 2018 motion.

¶7      The circuit court, Judge Sequin presiding, subsequently held a hearing in May 2021 on Nichols' June 2018 motion, wherein the court orally denied seven of Nichols' claims because the court found that they were previously addressed in Judge Miron's October 2017 order. The court allowed the parties to brief the eighth claim. Following the hearing, Nichols moved for Judge Sequin's recusal due to her friendship with Judge Miron.

¶8      Thereafter, in July 2021, the circuit court issued a written order reaffirming its oral ruling denying seven of Nichols' claims. In that same order the court also denied the eighth claim, finding that it was previously addressed in Judge Miron's May 2020 order and, therefore, was procedurally barred. Finally, the court also denied Nichols' request for recusal. Nichols moved for

reconsideration, which the court denied. Nichols now appeals the court's July 2021 order and its order denying his motion for reconsideration.

## DISCUSSION

### I. Judicial bias

¶9 In his motion seeking Judge Sequin's recusal, Nichols argued that recusal was required because Sequin was "good friends" with Judge Miron, who prosecuted Nichols in an unrelated matter in the 1990s and was also the presiding judge in Nichols' 2007 case. Nichols also cited a newspaper article in which the author discussed Judge Sequin's investiture—at which Judge Miron administered Sequin's oath—and quoted Sequin as stating that Miron was a "mentor" to her.

¶10 At the hearing on Nichols' June 2018 motion, Judge Sequin stated that "Judge Miron's father and my father practiced law together. Judge Miron and I practiced law together for a short period of time before he became the district attorney in Marinette County. And of course, he was the predecessor in … this courtroom that I now serve on." In the July 2021 order, Judge Sequin stated that she had "little, if any, contact with Judge Miron" between 1994 and 2019. Ultimately, Judge Sequin concluded that she was not required to recuse herself.

¶11 "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (alteration in original; citation omitted). "There is a presumption that a judge has acted fairly, impartially, and without prejudice. The presumption is rebuttable, placing the burden on the party asserting the bias to show that bias by a preponderance of the evidence." *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772 (citation omitted). Whether a judge's partiality can

reasonably be questioned is a question of law we review de novo. *Miller v. Carroll*, 2020 WI 56, ¶15, 392 Wis. 2d 49, 944 N.W.2d 542.

¶12      "In evaluating whether a party has rebutted the presumption, Wisconsin courts have taken both a subjective and objective approach." *Id.*, ¶21. Under the subjective approach, a "judge shall disqualify himself or herself from any civil or criminal action or proceeding when" he or she "determines that, for any reason, he or she cannot … act in an impartial manner." WIS. STAT. § 757.19(2)(g); *see also* *Herrmann*, 364 Wis. 2d 336, ¶144 n.12 (Ziegler, J., concurring) (stating that a judge who satisfies the statutory subjective test also "satisfies the subjective due process recusal test by determining that he or she is impartial"). "This statute 'is clearly drafted so as to place the determination of partiality solely upon the judge.' A reviewing court decides objectively whether the judge actually made the subjective determination." *State v. Pinno*, 2014 WI 74, ¶93, 356 Wis. 2d 106, 850 N.W.2d 207 (citations omitted). A reviewing court does not second-guess a judge's subjective bias determination. *See id.*; *State v. Harrell*, 199 Wis. 2d 654, 664, 546 N.W.2d 115 (1996).

¶13      Under the objective approach, we examine whether a party has shown either actual bias or a serious risk of actual bias. *See Herrmann*, 364 Wis. 2d 336, ¶¶29-30. Actual bias occurs where objective facts demonstrate that a judge actually treated a party unfairly. *State v. Goodson*, 2009 WI App 107, ¶9, 320 Wis. 2d 166, 771 N.W.2d 385. A serious risk of actual bias requires an "'objective inquiry' into whether the circumstances 'would offer a possible temptation to the average … judge to … lead him [or her] not to hold the balance nice, clear and true.'" *Miller*, 392 Wis. 2d 49, ¶24 (alteration in original; citation omitted). A serious risk of actual bias will occur only in the "exceptional case with 'extreme facts.'" *Id.* (citation omitted).

6

A. Subjective bias

¶14    Nichols first contends that we should conclude that Judge Sequin acted impartially when she decided his June 2018 motion because her statement that she could act in an impartial manner was not reasonable or credible and, thus, was clearly erroneous.  Nichols applies an incorrect legal standard in analyzing Judge Sequin's subjective bias determination.

¶15    Judge Sequin stated in her July 2021 order that her "professional relationship with a respected colleague will in no way interfere with this [c]ourt's ability to be fair and impartial."  She reaffirmed this position when she denied Nichols' motion for reconsideration, stating, "Any relationship with Judge Miron holds no influence over this [c]ourt's ability to render a fair, independent and unbiased decision in any matter."  Therefore, Judge Sequin made a subjective determination that she was not biased, which complied with WIS. STAT. § 757.19(2)(g) and the subjective due process test.  *See Pinno*, 356 Wis. 2d 106, ¶93.  She therefore correctly determined that she was not required to recuse herself due to subjective bias.

¶16    Nichols asserts that not applying a clearly erroneous standard of review to Judge Sequin's subjective bias determination is contrary to the legislative intent behind WIS. STAT. § 757.19(2)(g).  Nichols does not address the above-cited Wisconsin precedent (relied on by the State) and, instead, claims that "[a]ll cases cited by the State to support its position should be rejected, ignored, or overruled because they slavishly adhere to the … judge's determination that he or she can be impartial regardless of the fact that [the] determination is not credible."  Even if we were to consider these arguments persuasive, which we do not, we are bound by our supreme court's interpretation of § 757.19(2)(g).  *See Pinno*, 356

7

Wis. 2d 106, ¶93; *Harrell*, 199 Wis. 2d at 664; *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

¶17    Nichols cites to non-Wisconsin precedent, *Walberg v. Israel*, 766 F.2d 1071 (7th Cir. 1985), in support of his proposition that Judge Sequin's subjective determination was not reasonable or credible, and in doing so,[5] he fails to provide a pinpoint citation within *Walberg* for this assertion.  Even so, after reviewing *Walberg*, we do not find its holding pertinent to our disposition of this case and our subjective bias analysis.  In *Walberg*, the United States Court of Appeals for Seventh Circuit reversed a defendant's conviction after it concluded that the circuit court judge's "appearance was of a judge who had made up his mind at the start that the defendant was guilty and who proceeded to intimidate the defendant's lawyer so that the proceeding could be got[ten] over with and [the defendant] shipped off to prison for many years." *Id.* at 1077-78.  The court's conclusion had nothing to do with the judge's subjective belief that he was not biased, but it was instead based upon an objective bias analysis.

¶18    In addition, Nichols argues that "no judge worth their salt is ever going to admit that they cannot be fair and impartial and remain a judge."  This proposition is conclusory and preposterous.  Nichols' statement is contrary to the

---

[5] Nichols also cites to *United States v. Chancey*, 715 F.2d 543 (11th Cir. 1983), for the proposition that we should subject Judge Sequin's subjective bias determination to the clearly erroneous standard of review.  That case dealt with a sufficiency of the evidence challenge to a conviction following a jury trial. *Id.* at 546.  Specifically, the court concluded that no reasonable jury could have found one of the State's key witnesses credible. *Id.* at 546-47.  *Chancey* has absolutely no relevance to the analysis at issue here, and we do not find it persuasive.

oath taken by judges and does not overcome the presumption of impartiality we afford to Judge Sequin. As part of their oath of office, judges in Wisconsin "solemnly swear" to "support the constitution of the United States and the constitution of the state of Wisconsin"; to "administer justice without respect to persons"; and to "faithfully and impartially discharge the duties of said office to the best of [their] ability." WIS. STAT. § 757.02(1); *see also* WIS. CONST. art. IV, § 28; SCR 60.04.

### B. Objective bias

¶19 Next, Nichols argues that Judge Sequin should have recused herself because there was a serious risk of actual bias in allowing her to decide his June 2018 motion. In other words, Nichols claims that Judge Sequin was objectively biased against him.[6] In support of this argument, Nichols cites to Judge Sequin's relationship with Judge Miron: Miron administered the oath of office to Sequin as a circuit court judge, and the "City of Marinette has two judges in it"—"the smallest law firm imaginable."[7] He also argues that various newspaper articles demonstrate that the two judges "worked together at the same family law firm,

---

[6] At one point in his brief-in-chief, Nichols states that all of the Marinette County Circuit Court judges "would defer to each other's decisions without even any analysis of Nichols' grounds for relief to reconsider law of the case under the manifest injustice exception, and that is exactly what happened in this case." To the extent Nichols attempts to raise an argument that Judge Sequin demonstrated actual bias toward him, we deem that argument to be undeveloped, as it is supported only by a single general statement, and we do not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

[7] Nichols relies on the dissent in *Tesco American, Inc. v. Strong Industries, Inc.*, 221 S.W.3d 550 (Tex. 2006) (Hecht, J., dissenting), to support his position that the "City of Marinette" is a law firm. We do not find this case persuasive for several reasons. Most notably, *Tesco* was decided outside of our jurisdiction, and the majority opinion's conclusion rested on non-Wisconsin law. *See id.* at 553-54.

knew each other's parents, and basically grew up together in both a personal and professional relationship."

¶20    We conclude that Nichols fails to show by a preponderance of evidence that there was a serious risk of actual bias by Judge Sequin ruling on Nichols' June 2018 motion.    Nichols' argument can be summarized as follows: Judge Miron was biased when he presided over Nichols' trial and, through a professional and personal relationship with Miron, Judge Sequin could not impartially decide Nichols' June 2018 motion.  These assertions are far from the "extreme facts" necessary to establish a serious risk of actual bias and do not lead us to conclude by a preponderance of the evidence that a reasonable person would question Judge Sequin's impartiality.  *See **Miller***, 392 Wis. 2d 49, ¶24 (citation omitted).

¶21    Even assuming, without deciding, that there was a due process issue with regard to Judge Miron presiding over Nichols' 2007 trial, there is nothing in the record that shows that a due process violation continued in a manner that would create a serious risk of actual bias when Judge Sequin decided Nichols' June 2018 motion.  No reasonable person would be concerned that Judge Sequin would be biased in deciding an issue in a case involving Nichols merely because she briefly practiced law with Judge Miron roughly thirty years prior.  Further, there is no basis to conclude that there was a serious risk of actual bias by Judge Sequin presiding over Nichols' motion because she had a friendly relationship with Judge Miron.  That is, there is nothing in the record to suggest that Judge Miron's prosecution of Nichols in the 1990s had any bearing on Judge Sequin's ability to impartially address his postconviction motions related to a 2007 case. This is not the "exceptional case with 'extreme facts'" that gives rise to the

perception of a serious risk of actual bias.[8]  *See **Miller***, 392 Wis. 2d 49, ¶24 (citation omitted).

## II.  June 2018 motion

¶22    Next, Nichols asserts that the circuit court erred when it denied his June 2018 motion without an evidentiary hearing.  A WIS. STAT. § 974.06 motion for postconviction relief may be made at any time after the time for appeal or postconviction remedy provided in WIS. STAT. § 974.02 has expired.  *See* § 974.06(2); ***State v. Balliette***, 2011 WI 79, ¶34, 336 Wis. 2d 358, 805 N.W.2d 334.  However, a defendant is generally barred from raising claims in a § 974.06 motion that were or could have been raised on direct appeal or in a previous § 974.06 motion unless he or she presents a "sufficient reason" for failing to raise those claims previously or failing to do so adequately.  *See* § 974.06(4). The burden is on the defendant to show the existence of a sufficient reason.  ***State v. Crockett***, 2001 WI App 235, ¶10 n.3, 248 Wis. 2d 120, 635 N.W.2d 673. Further, a "matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue."  ***State v. Witkowski***, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991).  Whether claims raised in a § 974.06 motion are procedurally barred is a

---

[8] Although unclear, Nichols appears to argue at times that Judge Miron should have granted Nichols' recusal motion.  As noted above, however, after denying Nichols' recusal motion, Judge Miron retired and therefore did not decide Nichols' June 2018 postconviction motion.  As such, Nichols ultimately obtained the relief he sought in his motion to recuse Judge Miron—that is, having a different judge decide his June 2018 motion.  Under these circumstances, Judge Miron's denial of Nichols' recusal motion does not provide a basis to reverse Judge Sequin's orders denying the June 2018 motion and Nichols' subsequent motion for reconsideration.

question of law that we review de novo. *State v. Thames*, 2005 WI App 101, ¶10, 281 Wis. 2d 772, 700 N.W.2d 285.

¶23 "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal."[9] *State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. A defendant must demonstrate, however, that the new claims are "clearly stronger" than the claims postconviction counsel presented. *Id.*, ¶¶45-46.

¶24 A defendant is entitled to an evidentiary hearing on his or her WIS. STAT. § 974.06 motion unless the motion fails to allege "facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Romero-Georgana*, 360 Wis. 2d 522, ¶30 (citation omitted); *see also* § 974.06(3). If the defendant fails to meet the pleading standards in § 974.06(4), the circuit court does not erroneously exercise it's discretion by denying the motion without a hearing. *See Romero-Georgana*, 360 Wis. 2d 522, ¶¶54, 71.

---

[9] Where counsel's alleged error took place is particularly important. A defendant seeking to challenge postconviction counsel's effectiveness for his or her failure to challenge *trial counsel's* effectiveness must file a motion under WIS. STAT. § 974.06 in a circuit court. *See State ex. rel. Warren v. Meisner*, 2020 WI 55, ¶¶16-36, 392 Wis. 2d 1, 944 N.W.2d 588. Conversely, a defendant seeking to challenge postconviction counsel's effectiveness for errors that occurred *in the appellate setting* must file a writ of habeas corpus in this court. *See id.* In other words, the proper avenue for relief is determined by asking whether the "alleged error … occurred prior to the filing of the notice of appeal" or after. *See id.*, ¶45.

To the extent Nichols argues on appeal that his appellate counsel was ineffective for failing to file a timely appeal of the circuit court's October 2017 order, such a claim would need to be independently sought in this court by way of a writ of habeas corpus. *See id.*, ¶36.

¶25    Nichols' May 2017 WIS. STAT. § 974.06 motion alleged that his postconviction counsel was constitutionally ineffective for failing to timely file a WIS. STAT. § 974.02 motion alleging that his trial counsel rendered ineffective assistance in seven ways.  The circuit court denied all seven of those claims on their merits in its October 2017 order, without conducting an evidentiary hearing, and Nichols did not appeal that order.  It is undisputed that the seven ineffective assistance of counsel claims raised in Nichols' May 2017 motion are nearly identical—if not actually identical—to the first seven claims raised in his June 2018 motion.  Thus, Nichols is barred from raising those seven issues again and he was not entitled to an evidentiary hearing.  *See Witkowski*, 163 Wis. 2d at 990.

¶26    Nichols also argues that the circuit court "erroneously exercised [its] discretion by summarily denying" his May 2017 motion without an evidentiary hearing.  Similarly, Nichols asserts that the seven ineffective assistance of postconviction counsel claims were not finally adjudicated because the circuit court "summarily denied" his motion in its October 2017 order.  He argues that despite the fact that he did not appeal the court's order denying his May 2017 motion, we should still review that order.

¶27    The cases cited by Nichols in support of this assertion are to cases explaining that "ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal."  *See, e.g.*, *Romero Georgana*, 360 Wis. 2d 522, ¶36.  Further, Nichols cites to two United States Supreme Court cases without pinpoint citation, arguing, "post-conviction counsel abandoning his client and not filing a notice of appeal from the trial court's denial of a post-conviction motion also constitutes cause for excusing procedural default."  But his failure to file an appeal is jurisdictional, not procedural.  *See State v. Sorenson*, 2000 WI 43, ¶16, 234

Wis. 2d 648, 611 N.W.2d 240 ("The timely filing of a notice of appeal is necessary to give the court of appeals subject matter jurisdiction over an appeal."); *see also* WIS. STAT. RULE 809.10(1)(e). Here, the issues in the May 2017 motion were raised, but Nichols simply failed to appeal the circuit court's decision denying those issues. Thus, we do not have jurisdiction to consider the merits of Nichols' arguments related to the court's order denying his May 2017 motion.[10]

¶28 We further conclude that Nichols' eighth claim—that his trial, postconviction, and appellate counsel were all constitutionally ineffective for not raising the claim that Judge Miron should have recused himself from the 2007 case—was also properly denied on procedural grounds.[11] First, as it relates to his trial and postconviction counsel, Nichols could have, but failed to, raise ineffective assistance of counsel claims in his May 2017 motion. Therefore, unless Nichols provided a sufficient reason to the circuit court for failing to raise those claims in his May 2017 motion, he was procedurally barred from raising the claims in his June 2018 motion. *See Thames*, 281 Wis. 2d 772, ¶10 (we may affirm a circuit court's denial of a WIS. STAT. § 974.06 motion employing different reasoning than that of the court).

¶29 Nichols' June 2018 motion failed to provide *any* reason for this failure other than to argue in a conclusory fashion that his postconviction and

---

[10] Nichols cites to a number of cases from outside of this jurisdiction, including a Maryland appellate court decision and a United States Bankruptcy Court decision, to argue that the circuit court erroneously exercised its discretion. We do not find these cases persuasive because they are from outside of our jurisdiction and, therefore, do not aid in our analysis of WIS. STAT. § 974.06 or the circuit court's actions in this case based upon Wisconsin law.

[11] We interpret Nichols' eighth claim to be that all of his previous counsel failed to allege that Judge Miron was, or appeared to be, unconstitutionally biased against Nichols at the time of the 2007 case.

appellate counsel were ineffective. *See **Romero-Georgana***, 360 Wis. 2d 522, ¶64 ("We will not read into the [WIS. STAT.] § 974.06 motion allegations that are not within the four corners of the motion."). Nichols attempts to avoid the procedural bar by pointing to arguments he made in his brief-in-chief. However, we do not consider arguments that Nichols makes *now*, we consider the arguments he made in his motion. *See **Romero-Georgana***, 360 Wis. 2d 522, ¶64.

¶30 Second, regarding his postconviction and appellate counsel, Nichols failed to demonstrate that his eighth claim (that Judge Miron should have recused himself from the 2007 case) is "clearly stronger" than the claims that postconviction and appellate counsel actually pursued. *See **id.***, ¶¶45-46. Nichols was required to make this showing "by alleging 'sufficient material facts—e.g., who, what, where, when, why, and how—that, if true, would entitle him to the relief he seeks.' The five 'w's' and one 'h' sometimes run together, but a sufficient motion will answer all six questions." *See **id.***, ¶58 (citation omitted). Nichols' June 2018 motion simply stated that had "appellate/postconviction counsel filed" a motion for a new trial because Judge Miron was or appeared to be biased against him, the circuit court "would have been constitutionally required" to order a new trial. His motion failed to explain "why" a bias claim was valid, much less why it was stronger than any of the other previously raised claims.[12]

---

[12] "[I]n evaluating the comparative strength of the claims, reviewing courts should consider any objectives or preferences that the defendant conveyed to his [or her] attorney. A claim's strength may be bolstered if a defendant directed his attorney to pursue it." *State v. **Romero-Georgana***, 2014 WI 83, ¶73, 360 Wis. 2d 522, 849 N.W.2d 668. Here, Nichols' June 2018 motion did not allege that he instructed any of his counsel to pursue a bias claim, and we do not consider his arguments to the contrary on appeal.

¶31     On appeal, Nichols does argue that the bias claim against Judge Miron was clearly stronger than the other pursued claims because a bias claim is not subject to harmless error.  Even if we were to consider this argument, *see id.*, ¶64, and even if we were to assume that Nichols' previously pursued claims were subject to harmless error, we would conclude that his argument still lacks merit. Nichols fails to state why that claim is clearly better than the other claims brought in terms of likelihood of success.  Under these circumstances, Nichols' June 2018 motion failed to adequately allege that the ineffective assistance of counsel claim related to Judge Miron's purported bias is clearly stronger than the previous issues addressed in his direct appeal or in his other postconviction motions.  Accordingly, Nichols failed to demonstrate a sufficient reason for failing to raise this claim previously.

¶32     Nichols contends that the State is "estopped" from arguing that he did not present a "sufficient reason" because the State has "unclean hands" and that it is the "cause of the errors."  We deem these arguments undeveloped.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).  Nichols fails to explain why he is not required to comply with WIS. STAT. § 974.06 and does not attempt to distinguish the facts of this case from the mandates in § 974.06, as applied through well-established case law, requiring him to demonstrate a sufficient reason for his failure to adequately raise the eighth claim. *See* § 974.06(4).

¶33     Nichols also contends that the circuit court "automatically sided with" the court's October 2017 order when issuing its decision on Nichols' June 2018 motion "without even discussing Nichols' grounds for relief."  As discussed, the court was not required to entertain Nichols' claims that were "finally adjudicated" previously.  *See* WIS. STAT. § 974.06(3), (4).  According to Nichols,

the court was still required to "[d]etermine the issues and make findings of fact and conclusions of law" pursuant to § 974.06(3)(d). However, that statutory provision applies only if the court is required to hold an evidentiary hearing. Here, "the motion and the files and records of the action conclusively show that [Nichols was] entitled to no relief," based on the procedural bar. *See* § 974.06(3).

¶34 Lastly, Nichols asserts that Wisconsin jurisprudence—specifically, our supreme court's decision in ***State ex rel. Warren v. Meisner***, 2020 WI 55, ¶36, 392 Wis. 2d 1, 944 N.W.2d 588—defining a defendant's right to raise ineffective assistance of appellate counsel violates due process. Regardless of the merits of his claim, we cannot overrule published opinions from this court or our supreme court precedent unless a subsequent decision of the United States Supreme Court is in conflict with that precedent on a question of federal law. *See **Cook***, 208 Wis. 2d at 189-90; ***State v. Harvey***, 2022 WI App 60, ¶44, 405 Wis. 2d 332, 983 N.W.2d 700. Nichols does not argue that such a subsequent case exists, and we are therefore bound by our supreme court's decision in ***Meisner***.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.